UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL HANNA et al.,

        Plaintiffs,

v.

JESPERSEN & ASSOCIATES
LLC et al.,

        Defendants.

_____/

Case No. 2:23-cv-13258

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS (ECF No. 15)**

Dr. Michael Hanna and his company offer medical-writing services to clients
seeking to publish studies in scientific journals. In 2020, Jespersen & Associates, a
healthcare communications agency, contracted with Hanna for these services,
hoping to publish such a study. But at some point, the parties' relationship broke
down, leading Jespersen to terminate the contract. In response, Hanna filed copyright
registrations on the work product he had already created for Jespersen. And when
Jespersen later used that work product without Hanna's involvement, Hanna sued
for copyright infringement and breach of contract. Jespersen now moves to dismiss
Hanna's Amended Complaint, arguing that it had permission to use the work product
that Hanna created on its behalf. As explained below, Jespersen is correct, so its
motion will be granted.

# I. BACKGROUND

The following allegations come from Hanna's Amended Complaint, ECF No. 12. In January 2020, one of Jespersen's founders, Elizabeth Sarkar, engaged Hanna and his company, Mercury Medical Research and Writing, to help draft a "systematic review" of medical literature for publication in scientific journals. ECF 12 at PageID.106. The parties signed a contract outlining the details of that work. *See* ECF Nos. 12-4; 12-5.

For context, one step in getting a systematic review published is developing a "study protocol," which outlines how a study will proceed and what it hopes to accomplish. ECF Nos. 12 at PageID.106; 15 at PageID.166 n.3.[1] Once developed, a study protocol is then submitted to an online international registry called PROSPERO. ECF No. 12 at PageID.106. Submitting a study protocol to PROSPERO for registration is essential to the overall project's success—scientific journals will generally not publish a systematic review unless registration happens. *Id.* at PageID.107.

For this reason, the parties' contract contemplated the creation of a study protocol. One of the "services" that Hanna would provide to Jespersen was writing

---

[1] Jespersen refers to this step as a "review protocol." ECF No. 15 at PageID.166 n.3. For the purposes of this motion, the Court considers these terms interchangeable and will use "study protocol" going forward, in line with the contract language. *See* ECF No. 12-5 at PageID.133.

the study protocol. ECF No. 12-5 at PageID.133. After Hanna finished drafting the study protocol, he would give it to Jespersen for review and then incorporate any requested revisions. *See id.* at PageID.134, 136. Then, Hanna would "submit the protocol to PROSEPRO . . . and supply confirmation" to Jespersen. *Id.* at PageID.136. Upon Hanna's submission of the protocol to PROSPERO, Jespersen would pay him $2,000. *Id.* at PageID.137.

After creating several drafts of the study protocol, Hanna submitted the final version to PROSPERO on April 9, 2020. ECF No. 12 at PageID.107.

Sometime after Hanna submitted the study protocol, but before the systematic review could be completed, the parties' relationship soured. Thus, on June 17, 2020, Jespersen sent Hanna an email purporting to terminate the parties' contract. ECF No. 12-6 at PageID.139. By that point, Jespersen had reportedly paid Hanna $22,000 out of the $30,000 total fee specified in the contract. *See* ECF Nos. 15 at PageID.167; 12-5 at PageID.137. Hanna viewed Jespersen's unilateral termination as a breach, because under the contract's terms, once started, "the project cannot be canceled unless both parties agree in writing." ECF No. 12-5 at PageID.133.

Apparently in response to the alleged breach, Hanna then applied for copyright registrations on the various drafts of the study protocol he created for Jespersen. ECF No. 12 at PageID.107–08. On September 9, 2020, Hanna applied for his first copyright registration for a group of six drafts of the study protocol—which

included the final draft he ended up submitting to PROSPERO. *Id.* at PageID.107; ECF No. 12-2. The parties refer to this registration as the "First Work." ECF No. 12 at PageID.105; *see also* ECF No. 12-2. Hanna lists himself as the sole author of the First Work, *id.* at PageID.125, but he acknowledges that four out of the six drafts contained in the First Work list what he calls "anticipated future co-authors" of the systematic review, including Jespersen employees, *see* ECF No. 12 at PageID.108.

Next, on January 6, 2021, Hanna applied for his second copyright registration—this time for only study protocol's final version, which was submitted to PROSPERO. *Id.*; ECF No. 12-3. The parties refer to this as the "Second Work." ECF No. 12 at PageID.106; *see also* ECF Nos. 12-3; 12-7.

In February 2021, despite Hanna's copyrights, Jespersen submitted its own study protocol to PROSPERO that was "substantially copied word-for-word" from Hanna's now-copyrighted protocols. ECF Nos. 12 at PageID.111; 12-8. Hanna alleges that Jespersen's version failed to attribute authorship to him and that it remained available online until August 2021. ECF No. 12 at PageID.111–12.

Hanna thus sued Jespersen, alleging copyright infringement, violations of the Digital Millenium Copyright Act, and breach of contract. ECF No. 12. Jespersen filed a motion to dismiss, ECF No. 15, which was fully briefed, ECF Nos. 17; 19. This Court held a hearing on the motion on March 11, 2025.

- 4 -

## II. STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). If not, then the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## III. DISCUSSION

### A. Copyright Infringement

Counts I and II of Hanna's Amended Complaint allege copyright infringement and vicarious copyright infringement, respectively. ECF No. 12 at PageID.112–16. Jespersen argues that the copyright infringement claims should be dismissed for three independent reasons: (1) it had a license to use the study protocol; (2) Hanna's

- 5 -

two copyright registrations for the study protocol drafts are both invalid; and (3) Jespersen employees are co-authors of the study protocol, and therefore cannot be sued for infringement. ECF No. 15. The first argument is enough to resolve the case,[2] so it will be the only one discussed below.

---

[2] Jespersen's other two arguments are not necessarily dispositive at the motion-to-dismiss stage. As for the argument that Hanna's copyrights are invalid, courts must first presume the opposite—that a certificate of registration is valid. 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."). And when, as here, the registration is alleged to contain inaccurate information, courts must "request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* § 411(b)(2). The claims, therefore, could not be dismissed on this ground until the Copyright Office weighed in, which it has not.

As for the co-authorship argument, it is true that co-authors cannot sue each other for infringement. *See Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) (citing 17 U.S.C. § 201(a)). And to be sure, the contract repeatedly speaks of co-authorship by Hanna and Jespersen, both with respect to the study protocol and the systematic review. *See, e.g.*, ECF No. 12-5 at PageID.134 ("If the study sponsor, [Jespersen], and/or any *co-authors* request revisions of the *protocol*. . . .") (emphasis added). Even so, there is an outstanding question of whether Jespersen "made an independently copyrightable contribution" to the study protocol at issue, as is required to prove joint authorship. *See Corwin v. Quinonez*, 858 F. Supp. 2d 903, 910 (N.D. Ohio 2012) (citing *Childress v. Taylor*, 945 F.2d 500, 505–06 (2d Cir. 1991) (adopting test for determining co-authorship); *see also Tang v. Putruss*, 521 F. Supp. 2d 600, 605 (E.D. Mich. 2007) (adopting same test). The extent to which Jespersen made independently copyrightable contributions to the study protocol would be best fleshed out in discovery. For this reason, this argument does not wholly support dismissal either.

**1. License**

The Copyright Act requires a "transfer of copyright ownership" to be in writing. 17 U.S.C. § 204. But that requirement does not extend to transfers of a "nonexclusive license"—a license that does not transfer ownership but simply permits the copyrighted work to be used in a particular way. *Id.* § 101 (excluding "nonexclusive license" from the definition of "transfer of copyright ownership"); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) (detailing difference between exclusive and nonexclusive licenses).

There are, therefore, several ways for a copyright owner to grant a nonexclusive license, including (1) "expressly by words, either orally or in writing," or (2) "implicitly by conduct." *Mahavisno v. Compendia Bioscience, Inc.*, 164 F. Supp. 3d 964, 968 (E.D. Mich. 2016) (citing *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998)). When a copyright owner grants someone a license to use the copyrighted work, then the owner may not sue for copyright infringement unless the license is terminated or revoked. *Id.*

Jespersen first argues that it had an express license to use the study protocol. ECF No. 15 at PageID.175. After all, there is a contract governing the parties' relationship, one which Jespersen says granted it permission. *Id.* ("The Agreement is an express license for [Jespersen] to use the work created by [Hanna].").

- 7 -

However, this situation is difficult to shoehorn into the express-license category. That is because, although there is an *express* contract between the parties, that contract does not include any *express* terms about licensing. *See generally* ECF No. 12-5. Nor is the contract styled as a license agreement, as one might otherwise expect. Indeed, the contract could not have been styled in this way—because there was no copyrighted work at the time the contract was entered into. *See id.* Rather, Hanna copyrighted the study protocols only after the contractual relationship with Jespersen had broken down.

But even if there was no express license to use the study protocol, at a minimum, Jespersen had an implied license to use it. That is because, when considered as a whole, the contract shows that the parties intended Jespersen to be able to use the study protocol in the way Jespersen ultimately used it—by submitting it to PROSPERO.

An implied license arises when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requester copy and distribute it." *Mahavisno*, 164 F. Supp. 3d at 968–69 (citations omitted). In other words, when, based on the totality of circumstances, "the objective evidence leads to the conclusion that *the copyright owner intended the*

- 8 -

*defendant to use the copyrighted work*, the copyright owner should not later be able to sue for copyright infringement for that use." *Id.* at 969 (emphasis added).

The above test is derived from a leading case on implied licenses in the copyright-infringement context, *Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990). In *Effects*, a film producer asked a special-effects company to create footage for a movie he was making. *Id.* at 556. The parties orally agreed to a deal but did not discuss who would own the copyright to the footage. *Id.* The producer ended up disliking the footage and so paid the special-effects company only half the expected amount. *Id.* The producer incorporated the footage into the film anyway and then turned it over for distribution. *Id.*

The special-effects company sued the producer for copyright infringement. *Id.* at 556. The Ninth Circuit, however, held that the company had granted the producer an implied license to use the footage in the film. *Id.* at 558–59. In part, that was because the company "created [the] work at defendant's request and handed it over, intending that defendant copy and distribute it." *Id.* at 558. Put otherwise, the company knew the footage was to be incorporated into a film, and that the footage would be of little value for anything else. *Id.* at 558–59. For this reason, "the transaction had to be understood as contemplating a license to use the footage for the purpose it was created; otherwise the producer's payment of a large sum of money would have been senseless." *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d

821, 835 (9th Cir. 2001) (Kozinski, J., concurring) (summarizing the court's holding in *Effects*). Whether additional funds were owed was a contract matter, not a copyright matter. *Effects*, 908 F.2d at 559 ("Copyright ownership is comprised of a bundle of rights; in granting a nonexclusive license to Cohen, Effects has given up only one stick from that bundle—the right to sue Cohen for copyright infringement. It retains the right to sue him in state court on a variety of other grounds, including breach of contract.").

*Effects* establishes that there is an implied license here. Like the special-effects company there, which created the footage at the producer's request knowing it would be used for a specific purpose (incorporation into the film), Hanna created the study protocol at Jespersen's request knowing it would be used for a specific purpose (*i.e.*, submission to PROSPERO). ECF No. 12-5; *see Effects*, 908 F.2d at 558–59. And like the footage there, the study protocol here would be of little value to anyone besides Jespersen. *See Effects*, 908 F.2d at 558–59. In exactly the same way here, the transaction between Hanna and Jesperson here must be understood as contemplating a license to use the study protocol for the purpose of submission to PROSPERO; otherwise Jespersen's payment of money to Hanna would not make any sense. *See Foad Consulting*, 270 F.3d at 835 (Kozinski, J., concurring). Whether Jespersen owes additional funds to Hanna is a contract matter, not a copyright matter. *Effects*, 908 F.2d at 559.

Hanna resists this conclusion, arguing that Jespersen has failed to meet the third prong of the *Effects* test—which asks whether the licensor (Hanna) intended that the licensee (Jespersen) copy and distribute the work. ECF No. 17 at PageID.250–52. As interpreted by the Sixth Circuit, this prong focuses on whether "the copyright owners intended that their copyrighted works be used in the manner in which they were eventually used." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).

Despite Hanna's arguments, the third prong is met. Under Michigan law, the best evidence of what Hanna intended is the contract itself. *Rosen v. Tackett*, 193 N.W. 192, 193 (Mich. 1923) ("The written agreement should be taken as the best evidence of the intention of the parties."); *Klapp v. United Ins. Grp. Agency*, 663 N.W.2d 447, 476 (Mich. 2003) ("[T]he language of the parties' contract is the best way to determine what the parties intended.").

Here, the contract makes clear that the parties intended the study protocol to be used in the manner in which it was eventually used—submission to PROSPERO. ECF No. 12-5 at PageID.136 ("After receiving feedback on the study protocol . . . [Hanna] will revise accordingly *and submit the protocol to PROSPERO* within two weeks, and supply confirmation of registry submission to [Jespersen].") (emphasis added); *Johnson*, 149 F.3d at 502. Indeed, this appears to be the only reason why Jespersen requested Hanna to create a study protocol in the first place. *See* ECF No.

12-5 at PageID.133 (listing "writing and registering [on PROSPERO] the study protocol" as one of the "services" contracted for); *id.* at PageID.134, ¶¶ 5–7 (detailing process of revising and submitting study protocol to PROSPERO).

Hanna responds that he did not intend for Jespersen to submit the study protocol to PROSPERO *without his own involvement*. ECF No. 17 at PageID.251. He argues that the contract did not give Jespersen "any license whatsoever to use either the First Work or the Second Work to register the study protocol on PROSPERO." *Id.* at PageID.243; *see also* ECF No. 12-5 at PageID.134, ¶ 6. Rather, Hanna says that "[b]y the express terms of the Agreement, the Defendants were not allowed to do anything with the study protocol." ECF No. 17 at PageID.243; *see also* ECF No. 12 at PageID.109 (alleging that "[t]he Agreement specifically states that [Hanna] will be the only entity handling registration of the First Work and the Second Work with PROSPERO"). Boiled down, Hanna's argument is essentially that, because the contract suggests that *he* would be the party to submit the study protocol to PROSPERO, he clearly did not intend that Jespersen submit it, and so Jespersen had no implied license to do so. ECF No. 17 at PageID.250–51.

But this stretches the contract language too far. True enough, the contract contemplates Hanna to be the party with the task to submit the study protocol to PROSPERO. *See* ECF No. 12-5 at PageID.136 ("After receiving all feedback on the study protocol . . . [Hanna] will revise accordingly and submit the protocol to

- 12 -

PROSPERO within two weeks, and will supply confirmation of registry submission to [Jespersen].”). And the contract sets forth how much Hanna would be paid if he completed the task of submitting the study protocol. *Id.* at PageID.134, 137 (stating that $2,000 will be due to Hanna “upon submission of the protocol to PROSPERO”). However, that is not the same as saying that Hanna had the *exclusive right* to submit the study protocol. Indeed, the contract contains no language reserving Hanna such a right or prohibiting Jespersen from submitting the protocol itself. Nor does the contract explain why it would be important or material for Hanna to be the one to submit the study protocol. In fact, the contract suggests the opposite—that Hanna submitted the study protocol only as a service to Jespersen. *See* ECF No. 12-5 at PageID.133 (stating that “registering the study protocol” will be one of the “services” that Hanna will provide to Jespersen).

To be sure, perhaps it was important to Hanna that he submit the study protocol because that would have triggered Jespersen’s obligation to pay a certain sum of money. But again, such a claim sounds in contract, not copyright. For copyright purposes, *who* submitted the study protocol to PROSPERO is beside the point. All that matters is whether the study protocol was eventually used in the way that it was always intended to be used—submission to PROSPERO—which it was. *Johnson*, 149 F.3d at 502. At bottom, the contract makes clear that the parties intended and understood this use. *See Jeffrey A. Grusenmeyer & Assocs., Inc. v.*

- 13 -

*Davison, Smith & Certo Architects, Inc.*, 212 F. App'x 510, 514 (6th Cir. 2007) (finding no infringement when "the contract . . . permitted the defendants to use the plaintiff's drawings for the very purposes to which those drawings were put"). Jespersen, therefore, had an implied license to submit the study protocol to PROSPERO, and so Hanna's copyright-infringement claims fail.

## B. Digital Millenium Copyright Act (DMCA) Claims

Counts III and IV of Hanna's Amended Complaint assert claims under the Digital Millenium Copyright Act. ECF No. 12 at PageID.116–18. But as both parties acknowledged at the March 11, 2025, motion hearing, because there is no infringement here, the DMCA claims necessarily fail too. *Design Basics, LLC v. Big C Lumber Co.*, No. 3:16-CV-53, 2019 WL 3285958, at *10 (N.D. Ind. July 22, 2019) ("[A] claimant cannot recover on a DMCA claim where there has been no infringement of the copyrighted work.") (citation omitted).

## C. Breach-of-Contract Claim

That leaves Count V for breach of contract, ECF No. 12 at PageID.118, a state-law claim over which this Court declines to exercise supplemental jurisdiction, *see* 28 U.S.C. § 1367(c)(3). Accordingly, this claim will be dismissed without prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 15, is **GRANTED**. Counts I, II, III, and IV of Plaintiffs' Amended Complaint, ECF 12, are **DISMISSED WITH PREJUDICE**. Count V is **DISMISSED WITHOUT PREJUDICE**.

**This is a final order and closes the above-captioned case**.

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 31, 2025

- 15 -